[Cite as *State v. Daboni*, 2021-Ohio-3368.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                 :    Case No. 20CA10[1]

    v.                                  :

                        :    <u>DECISION AND</u>

JACQUES DABONI,                         :    <u>JUDGMENT ENTRY</u>

                        :

    Defendant-Appellant.                :
_____
APPEARANCES:

Jacques Daboni, Caldwell, Ohio, Appellant, pro se.

James K. Stanley, Meigs County Prosecuting Attorney, Pomeroy, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Appellant, Jacques Daboni, appeals the trial court's judgment entry denying his petitions to vacate or set aside judgment of conviction or sentence that were filed in three underlying cases. On appeal, Daboni raises two assignments of error contending 1) that the trial court erred in holding the petition for

---

[1]It appears that Daboni is appealing from the denial of his petitions to vacate or set aside judgment of conviction or sentence that were filed in the underlying case nos. 14CR173, 14CR232, 15CR023. Daboni moved this Court to consolidate his appeals on November 13, 2020; however, this Court denied his motion on November 23, 2020, stating that "[t]he trial court's entry from which Appellant is appealing previously consolidated all three trial court cases which were assigned case number 20CA10." We note this fact because this is the fourth time this matter has been before us on appeal and in each prior appeal, three separate appellate case numbers were assigned. Thus, despite the fact that there is a single appellate case number assigned to the present appeal, Daboni is appealing the denial of his petitions that were filed in each of the three underlying cases.

postconviction relief had no merit and in denying the petition, it also erred in

failing to make findings of fact and conclusions of law; and 2) that the trial court

erred in failing to hold a hearing on the petition.  However, because Daboni's

petitions were untimely filed petitions for postconviction relief, we conclude the

trial court lacked jurisdiction to entertain the constitutional claims raised in the

petitions and should not have addressed them on the merits.  Further, because the

petitions were untimely filed and did not meet any of the exceptions to the filing

requirements, the trial court had no duty to issue findings of fact and conclusions

of law, nor to hold a hearing on the petitions.  Thus, both of Daboni's assignments

of error lack merit and are overruled.

{¶2} However, because Daboni's claims should have been dismissed, rather

than denied, the judgment of the trial court is hereby modified in order to reflect

that the petitions should have been dismissed for lack of jurisdiction.[2]

Accordingly, the judgment of the trial court is affirmed as modified.

FACTS

{¶3} We take the following information from our prior consideration of this

matter, as set forth in *State v. Daboni*, 4th Dist. Meigs Nos. 18CA3, 18CA4,

18CA5, 2018-Ohio-4155, ¶ 4-11 (hereinafter "*Daboni II*"):

---

[2]This procedural remedy is consistent with the remedy applied in *State v. Brown*, 4th Dist. Scioto No. 16CA3770, 2017-Ohio-4063, ¶ 9, and more recently, *State v. Bear*, 4th Dist. Gallia No. 20CA9, 2021-Ohio-1539, ¶ 2, fn. 1.

The record reveals that Appellant, Jacques Goerges K. Daboni, was indicted on September 23, 2014, in Case No. 14CR173 in the Meigs County Court of Common Pleas on multiple felonies, which included three counts of trafficking in heroin, one count of possession of heroin, and one count of engaging in a pattern of corrupt activity. Another indictment was filed in the Meigs County Court of Common Pleas on December 18, 2014, Case No. 14CR232, charging Appellant with the commission of five additional felonies, which included five more counts of trafficking in heroin.  Thereafter, an additional indictment was filed on March 17, 2015, Case No. 15CR023, charging Appellant with an additional count of engaging in a pattern of corrupt activity, a second-degree felony.

The charges stemmed from the execution of an arrest warrant upon Jeremy Burgess at 303 5th Street, Racine, Ohio, on September 4, 2014, at a residence believed to be owned by Chad Diddle and leased to Appellant. Upon entering the residence to arrest Burgess, law enforcement observed multiple baggies of what appeared to be heroin laying in plain view on a table inside the residence in the room where Burgess was located.  A search warrant was subsequently issued and a search of the entire residence was conducted, which yielded additional drugs. According to the "More Particular Bill of Particulars" filed in Case No. 14CR173, two controlled buys of heroin took place between confidential informants and Chad Diddle, who was working for Appellant.  The bill further described the search of the residence owned by Diddle, but rented by Appellant, which occurred on September 4, 2014, and which resulted in the discovery of 45.84 grams of heroin, part of which had been individually packaged for sale and part of which was in ball form. One of the trafficking in heroin charges as well as the possession of heroin charges stemmed from the results of this search. The bill further described the basis for the engaging in a pattern of corrupt activity charge as follows:

> "The purpose of the illicit enterprise is to make money for Jacques Daboni, a.k.a. "Jock." Daboni set up a drug ring in Meigs County, Ohio to distribute heroin. Daboni recruited local heroin users and other individuals to become his 'runners' and sell heroin on his behalf. Members of the enterprise include, but are not limited to, Jacques Daboni, Chad Diddle, Amber Duffy, Jeremy Burgess, and Theodore Brown.

Daboni would purchase heroin in bulk from areas like Columbus, Ohio and transport to it [sic] Meigs County, Ohio. Once in Meigs County, the heroin would then be divided up into smaller quantities for re-selling.

Daboni recruited Chad Diddle to sell heroin for Daboni. Diddle, in return, would get heroin as payment for selling on behalf of Daboni. Chad Diddle owns a house located at 303 5th Street, Racine, Ohio 45771. Daboni rented that residence as a primary spot to distribute heroin to his runners to be resold throughout Meigs County, Ohio. Daboni would also have Diddle pay some of the utility bills on his behalf. Daboni purchased cattle with his drug money and kept them on Diddle's land. On or about 7.28.14 Diddle sold .22g of heroin for Daboni. On or about 8.16.14 Diddle sold 1.99g of heroin for Daboni.
Daboni had an electronic key code lock put on the door of the residence so his runners could access the heroin and continue to sell it on his behalf.

On 9/04/14, law enforcement searched Daboni's residence at 303 5th st. [sic] Racine, Ohio, 45771 and found 36 individually wrapped baggies of heroin totaling 11.04 grams inside a black case downstairs, along with 17 individually wrapped baggies of heroin totaling 9.86 grams on the table. Also in the room with the heroin were two scales and scissors used for packaging. An additional 24.94 grams of heroin was found in the upstairs bedroom closet in a secret compartment crafted into the side of the closet.

Daboni recruited Amber Duffy to sell heroin for Daboni. Duffy, in return, would get heroin as payment for selling on behalf of Daboni. Those transactions include, but are limited to: on or about 5/01/14 Duffy sold 1g of heroin for Daboni, on or about 5/23/14 Duffy sold .93g of heroin on behalf of Daboni; and or about 4/08/14 Duffy sold .46g of heroin for Daboni. Also, Daboni would have Duffy pay some of the utility bills on his behalf.

> Daboni recruited Jeremy Burgess to sell heroin for Daboni. Burgess, in return, would get heroin as payment for selling on behalf of Daboni.
>
> Daboni recruited Theodore Brown, a.k.a. "Teddy" to sell heroin for Daboni. Brown, in return, would get heroin as payment for selling on behalf of Daboni. The incidents forming the pattern of corrupt activity are the other charges in this indictment: counts one through four. They include, but are not limited to, two or more incidents of corrupt activities, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated and are not so closely related to each other and connected in time and place that they constituted a single event by engaging in, attempting to engage in, soliciting, coercing, or intimidating another to engage in any of the previous counts."

According to the "More Particular Bill of Particulars" filed in Case No. 14CR232, three controlled buys of heroin took place between confidential informants and Amber Duffy, and one controlled buy of heroin took place between confidential informants and Theodore Brown, both of which were working for Appellant. The bill further described the search of Appellant's residence on September 4, 2014, as the basis for the fifth drug trafficking count in that case. Additionally, the bill filed in this case contained the same detailed version of events set forth above.

Finally, the "More Particular Bill of Particulars" filed in Case No. 15CR023, which contained only one count of engaging in a pattern of corrupt activity, referenced the controlled buys involving Amber Duffy and Theodore Brown, which formed the basis of the trafficking counts in Case No. 14CR232. The bill further contained the same detailed version of events set forth above, with respect to the alleged pattern of corrupt activity.

Appellant pleaded not guilty to the charges and the matter proceeded through discovery. A motion in limine was filed prior to trial requesting, in pertinent part, that the State be prohibited from mentioning Appellant's ownership of cattle. In the motion, Appellant conceded there was no causal connection between ownership of cattle

and the drug allegations contained in the indictment, but argued that the mention of such was irrelevant and prejudicial. This Court was unable to locate an entry in the record regarding the grant or denial of this motion, but the parties agree on appeal there was an agreement that Appellant's ownership of cattle would not be mentioned before the jury. Appellant also filed a pre-trial motion to appear in plain clothes before the jury, which was granted.

Further, Appellant, through counsel, requested suppression of statements made during calls from jail and also suppression of the results of the search warrant executed upon the 303 5th Street, Racine, Ohio address. A suppression hearing was held on both motions on July 22, 2015. It appears from the transcript of the hearing that counsel and the court agreed that the issue related to the suppression of the statements could be submitted through written legal arguments in the form of briefs. However, a hearing was held on the issue regarding the search of the residence alleged to be the home of Appellant in Racine, Ohio. The State presented two witnesses during the hearing, Agent William Gilkey, Director of the Major Crimes Task Force in Gallia and Meigs counties, and Agent William Stewart, also employed with the Gallia/Meigs Major Crimes Task Force as well as Ohio's Organized Crime Investigation Commission. The hearing transcript indicates it was the understanding of the parties from the beginning of the hearing that the State would go forward with its witnesses and then Appellant would determine whether to go forward, with Appellant reserving the right for an opportunity to reconvene the hearing in two weeks if necessary.

The hearing proceeded with testimony by both Gilkey and Stewart and Appellant's counsel cross-examined both witnesses before the hearing was concluded. Written post-hearing briefs were then submitted by counsel for both parties. Nothing else happened regarding suppression until the final pre-trial hearing was held on October 8, 2015. During the hearing, the trial court orally overruled both motions to suppress. There was no indication at the hearing that Appellant's counsel desired an opportunity to present further argument or evidence on the issues. Thereafter, Appellant fired his counsel and retained new counsel, who entered an appearance on October 16, 2015. New counsel filed two pleadings, nearly three months after the suppression hearing was held, entitled "Request for Hearing on Suppression Motion," the first one on

November 13, 2015, and the second one on November 16, 2015. The contents of both pleadings were the same, noted that the suppression motion had not been ruled upon yet, that prior counsel had been given an opportunity to "reconvene this hearing if needed[,]" and asked the court for continuation of the suppression hearing. The trial court, however, issued a journal entry on November 25, 2015, denying Appellant's request and formally overruling the motions. In its journal entry, the trial court cited the fact that Appellant's first counsel filed the motions to suppress and that his second counsel attended the suppression hearing and submitted additional briefs. The trial court denied both motions, citing its review of the motions, briefs and hearing, and noting it was further reflecting on its ruling from the bench on October 8, 2015.

After denial of the suppression motions, the matter proceeded to a jury trial. As will be discussed more fully below, an issue occurred just prior to the beginning of trial in which Appellant was seen in jail clothes by a few members of the jury. This prompted Appellant to file a motion for mistrial, which was denied by the trial court. Pertinent witness testimony from the trial will be discussed below in our analysis portion of the opinion, however, the record reflects that Appellant was ultimately convicted on all counts after a jury trial, with the exception of count number four in case number 14CR232. Appellant appealed, but this Court determined that count four in case number 14CR232 appeared to remain pending, and as a result there was no final order vesting this Court with jurisdiction to consider the appeal. Accordingly, the appeal was dismissed. ["*Daboni I*"]. Thereafter, the trial court formally dismissed the pending count and Appellant again appealed. * * * .

{¶4} Daboni's second appeal resulted in this Court's affirmance of Daboni's convictions, along with a reversal as to the imposition of one of his sentences and a remand for resentencing to correct sentencing errors that occurred with respect to sentences imposed for allied offenses of similar import. *Daboni II* at ¶ 2.[3] The

---

[3]*Daboni II* was released on October 5, 2018.

trial court held a new sentencing hearing on remand, which led to another appeal. *State v. Daboni*, 4th Dist. Meigs Nos. 19CA3, 19CA4, 19CA5, 2020-Ohio-832 (hereinafter "*Daboni III*").[4]  In that appeal, this Court once again found the trial court had erred in sentencing Daboni, but instead of remanding the matter for resentencing, this Court modified the trial court's prior judgment to correct the sentencing errors.  *Daboni III* at ¶ 33-34.

{¶5} Thereafter, on March 5, 2020, Daboni filed petitions to vacate or set aside judgment of conviction or sentence in each of his underlying cases.  These motions appear to have been consolidated by the trial court, which issued a single judgment entry denying the motions on their merits, without issuing findings of fact or conclusions of law, and without holding a hearing.  It is from this judgment that Daboni now brings appeal, setting forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

I.      "TRIAL COURT ERRED IN HOLDING THE PETITION FOR POSTCONVICTION RELIEF HAD NO MERIT AND IN DENYING THE PETITION, AND FAILING TO MAKE FINDINGS OF FACT/CONCLUSIONS OF LAW."

II.     "TRIAL COURT ERRED IN FAILING TO HOLD A HEARING ON PETITION."

---

[4] *Daboni III* was released on February 13, 2020.

{¶6} We address Daboni's assignments of error in conjunction with one another for ease of analysis. On appeal, Daboni argues that the trial court erred when it denied his petitions to vacate or set aside judgment of conviction or sentence, which he characterized as petitions for postconviction relief filed pursuant to R.C. 2953.21, and which were filed on March 5, 2020. He also argues the trial court further erred in failing to make findings of fact and conclusions of law in denying his petitions, and in failing to hold a hearing on the petition.

Standard of Review

{¶7} The postconviction relief process is a collateral civil attack on a criminal judgment rather than an appeal of the judgment. *State v. Betts*, 4th Dist. Vinton No. 18CA710, 2018-Ohio-2720, at ¶ 11; *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). Postconviction relief is not a constitutional right; instead, it is a narrow remedy that gives the petitioner no more rights than those granted by statute. It is a means to resolve constitutional claims that cannot be addressed on direct appeal because the evidence supporting the claims is not contained in the record. *State v. McDougald*, 4th Dist. Scioto No. 16CA3736, 2016-Ohio-5080, ¶ 19-20, citing *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014-Ohio-308, ¶ 18.

{¶8} As observed in *Betts*:

"[A] trial court's decision granting or denying a post-conviction relief petition filed pursuant to R.C. 2953.21 should be upheld absent an

abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for post-conviction relief that is supported by competent and credible evidence." *Betts, supra*, at ¶ 12, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58.

*Betts, supra*, at ¶ 12.

{¶9} A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, 7 N.E.3d 1173, ¶ 8.

{¶10} A petitioner seeking post-conviction relief is not automatically entitled to an evidentiary hearing. *Betts, supra*, at ¶ 13, citing *State v. Black*, 4th Dist. Ross No. 15CA3509, 2016-Ohio-3104, ¶ 9, in turn citing *State v. Calhoun*, 86 Ohio St.3d 279, 282, 714 N.E.2d 905 (1999); *State v. Slagle*, 4th Dist. Highland No. 11CA22, 2012-Ohio-1936, ¶ 13. Rather, before granting a hearing on a petition, the trial court must first determine that substantive grounds for relief exist. R.C. 2953.21(C). "Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence that demonstrates the petitioner suffered a violation of the petitioner's constitutional rights." *In re B.C.S.*, 4th Dist. Washington No. 07CA60, 2008-Ohio-5771, ¶ 11. Furthermore, in order to merit a hearing, the petitioner must show that the claimed " 'errors resulted in prejudice.' " *Id.*, quoting *Calhoun* at 283.

{¶11} Additionally, res judicata applies to proceedings involving post-conviction relief. *Betts* at ¶ 14, citing *Black* at ¶ 10, in turn citing *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 671 N.E.2d 233 (1996). The Supreme Court of Ohio has explained as follows:

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus (1967).

{¶12} " 'Therefore, "any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings." ' " *Black* at ¶ 10, quoting *State v. Segines*, 8th Dist. Cuyahoga No. 99789, 2013-Ohio-5259, ¶ 8, in turn quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 16.

{¶13} Importantly, we note that limitations exist with respect to the filing of a postconviction relief petition. A petition for postconviction relief is subject to strict filing requirements. Former R.C. 2953.21(A)(2) required a petition for postconviction relief to be filed "no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication * * *. If no appeal is taken * * * the

petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal." On March 26, 2015, HB 663 took effect and extended the time for filing a petition for postconviction relief to 1) 365 days from the date on which the trial transcript was filed in the court of appeals in the direct appeal of the judgment of conviction; or 2) 365 days after the expiration of the time for filing the notice of appeal, if no direct appeal is taken.  R.C. 2953.21(A)(2).

{¶14} If a defendant fails to file his petition within the prescribed period, the trial court may entertain the petition only if:  1) the petitioner shows either that he was unavoidably prevented from discovery of the facts upon which he must rely to present the claim for relief or that the United States Supreme Court recognized a new federal or state right that applies retroactively to him; and 2) the petitioner shows by clear and convincing evidence that no reasonable factfinder would have found him guilty but for constitutional error at trial. *See* R.C. 2953.23(A)(1). *See also State v. McManaway*, 4th Dist. Hocking No. 16CA8, 2016-Ohio-7470, ¶ 13-16 (trial court lacks jurisdiction to entertain an untimely petition for post-conviction relief unless the untimeliness is excused by statute).

{¶15} Moreover, and dispositive of the present case, is the fact that a remand for resentencing that occurs as a result of a direct appeal does not restart the time clock for purposes of filing a petition for postconviction relief. *See State*

*v. Casalicchio*, 8th Dist. Cuyahoga No. 89555, 2008-Ohio-2362, ¶ 26 (holding that "[w]hen the trial court imposed [Casalicchio's] 'second' sentence at the resentencing hearing, 'it [did] not serve to restart the clock for postconviction relief purposes as to any claims attacking the underlying conviction' "), quoting *State v. Gross*, 5th Dist. Muskingum No. CT2006-0006, 2006-Ohio-6941, ¶ 34; *State v. Wine*, 3d Dist. Auglaize No. 2-15-07, 2015-Ohio-4726, ¶ 15-16. *See also State v. Simmons,* 11th Dist. Lake Nos. 2006-L-265 and 2006-L-276, 2007-Ohio-4965, ¶ 46.

### Legal Analysis

{¶16} Here, as set forth above, Daboni was initially convicted and sentenced on the underlying charges on May 10, 2016. The transcript in his first appeal was filed on October 11, 2016, and thus, according to the plain language of R.C. 2953.21(A)(2), Daboni had 365 days from that date to file his petition for post-conviction relief. However, as also set forth above, on direct appeal this Court ultimately found that because the trial court had failed to dispose of one of the charges the order was not final or appealable. *Daboni I, supra,* at ¶ 1. As such, the appeal was dismissed for lack of jurisdiction. On January 23, 2018, the trial court issued an "Amended Judgment Entry as to Count Four only," which dismissed the charge that remained pending. There is no indication from the record before us that the trial court held a new sentencing hearing, but rather, it appears the trial

court simply dismissed the charge that remained pending, thereby rendering the order final and appealable.

{¶17} However, assuming arguendo that time did not begin to run on October 11, 2016, in light of our determination that the original judgment of conviction and sentence was not a final appealable order, the date for filing his petition for postconviction relief certainly began to run when the trial transcript was filed in Daboni's second direct appeal on March 7, 2018. The fact that Daboni's second appeal resulted in a remand for resentencing had no impact on the time requirements for filing a postconviction relief petition. *Casalicchio*, *Gross*, *Simmons* and *Wine*, *supra*. Further, as observed previously by this Court, "Ohio courts are unanimous in concluding that the time limit for filing a petition for postconviction relief runs from the original appeal of the conviction." *State v. Davis*, 4th Dist. Washington No. 10CA25, 2011-Ohio-1706, ¶ 8 (rejecting an argument that a petition was timely because the court's act of resentencing the defendant reset the 180-day time limit), citing *State v. Piesciuk*, 12th Dist. Butler No. CA2009-10-251, 2010-Ohio-3136, ¶ 12*; State v. Seals*, 8th Dist. Cuyahoga No. 93198, 2010-Ohio-1980, ¶ 7; *State v. Haschenburger*, 7th Dist. Mahoning No. 08-MA-223, 2009-Ohio-6527, ¶ 27. As explained in *Davis*: " '[t]o hold otherwise would extend [the time to file] "well beyond the time limits set forth in R.C. 2953.21(A)(2) to an undetermined time in the future, all contrary to the intent of

the legislature." ' " *Davis* at ¶ 8, quoting *Piesciuk* at ¶ 12, in turn quoting *State v. Laws*, 10th Dist. Franklin No. 04AP283, 2004-Ohio-6446, ¶ 6.

{¶18} Here, it is clear from the record that Daboni's petitions for post-conviction relief, which were filed on March 5, 2020, were untimely filed. Further, he failed to acknowledge the untimeliness in his petitions or argue any of the exceptions to the filing requirements applied. Daboni did, however, file a separate pleading on April 13, 2020, over a month after his petition was filed, moving the court to "construe the already filed P.C.R. petition as timely and meeting good cause for lateness, and to deem this instant motion as inclusive to that petition." Daboni very generally stated that he had "new evidence wich [sic] no jury would have found him guilty beyond a reasonable doubt[,]" and that he "could not have discovered this new evidence until now."

{¶19} His motion went on to allege that a Freedom of Information Act response from the U.S. Marshals Service could not have been obtained any sooner than it was, which caused his late filing; however, he provides no elaboration in his motion, nor on appeal, as to why the information from the U.S. Marshals Service could not have been obtained by him any sooner. Attached to Daboni's petition is a letter from the U.S. Department of Justice, United States Marshals Service, dated October 10, 2019. The letter references that Daboni made a Freedom of Information Act Request, but it does not include the date of Daboni's request, nor

has Daboni argued, either below or on appeal, that he had made this request or had been seeking this information prior to the deadline for filing his petition for post-conviction relief.

{¶20} Furthermore, although Daboni argues that the documents attached to the Freedom of Information Act Request demonstrate that U.S. Marshals did not assist Ohio authorities in the execution of an arrest warrant for Jeremy Burgess,[5] who was arrested in a residence rented by Daboni, we can find no such information contained in the documents. The attached documents do not pertain to Jeremy Burgess, but instead consist of a criminal complaint and warrant for Daboni's arrest issued in Jackson County, West Virginia. Further, multiple places in the documents reference that the State of West Virginia and/or U.S. Marshalls Service were seeking assistance in the apprehension of Daboni from the State of Ohio (i.e., "S/WV requests the assistance of S/OH in the location and apprehension of DABONI[,]" and "the USMS S/WV requested the assistance of [name redacted] in locating and apprehending Jacques DABONI * * *"). Thus, these documents do not support the arguments contained in Daboni's petition. Accordingly, because Daboni has failed to establish the applicability of either exception set forth in R.C.

---

[5] Burgess's arrest served as the basis for the later issuance of a search warrant for a residence being rented by Daboni.

2953.23(A), we find that the trial court lacked jurisdiction to entertain the petitions. *Brown, supra*, at ¶ 25; *Bear, supra*, at ¶ 2.

{¶21} Moreover, as set forth above, in addition to dismissing a petition as being untimely, a trial court may also dismiss a petition when the claims are barred by the doctrine of res judicata. *See State v. Boler*, 4th Dist. Athens No. 18CA2, 2018-Ohio-3722, ¶ 19, citing *State v. Szefcyk*, supra, at syllabus. Here, the record before us indicates that Daboni already argued in his second direct appeal, that his Fourth Amendment rights were violated when officers entered the residence at issue to execute an arrest warrant upon Jeremy Burgess, without a search warrant, and absent exigent circumstances. *Daboni II* at ¶ 13. In rejecting Daboni's argument, we noted that Daboni had failed to raise the argument in his suppression motion and, as such, could not make the argument for the first time on appeal. *Id.* at ¶15-16. We further observed that although the arrest warrants for both Burgess and Daboni had been provided to defense counsel, as indicated in the suppression hearing transcript, they had not been made a part of the record. *Daboni II* at ¶ 15. Daboni seems to suggest in the present appeal that he had never been provided with copies of any arrest warrants until his Freedom of Information Act Request was answered on October, 10, 2019. However, the record and our review of the record in a prior appeal of this matter do not support that argument. Instead, the record before us indicates that although these arrest warrants were not formally

filed and made part of the record, they were in the possession of defense counsel and thus, arguments concerning the validity of the warrants could have been raised during the suppression stage of the proceedings.  However, they were not and are now barred by the doctrine of res judicata.

{¶22} In summary, because the trial court lacked jurisdiction to consider Daboni's petition for postconviction relief, " '[t]he trial court technically erred by addressing the merits of [the] motion.' " *Bear, supra*, at ¶ 18, quoting *Brown, supra,* at ¶ 25.  Instead, Daboni's motion should have been dismissed for lack of jurisdiction. *Id.*[6]  We find, however, that Daboni has not been prejudiced by this error because the outcome remains the same.  As such, the trial court lacked jurisdiction to consider these claims and rather than denying them, the trial court should have dismissed them.  Therefore, under the authority of App.R. 12(A)(1)(a), the judgment of the trial court is modified to reflect dismissal of Daboni's claims.  Accordingly, we affirm the judgment with the modification.  *See State v. Brown, supra*, at ¶ 39, citing *State v. Brewer*, 2nd Dist. Montgomery No. 24910, 2012-Ohio-5406, ¶ 10; *State v. Griffin*, 1st Dist. Hamilton Nos. C-150258 and 150005, 2016-Ohio-782, ¶ 13; *State v. Bear, supra*, at ¶ 12.

---

[6]Further, because the petition was untimely filed and Daboni failed to establish any of the exceptions of the filing requirements applied, and because the arguments in the petition were further barred by the doctrine of res judicata, the trial court was under no duty to issue findings of fact or conclusions of law or hold a hearing on the petition. *See State v. Ross*, 4th Dist. Scioto No. 17CA3823, 2018-Ohio-4105, ¶ 19, quoting *State ex rel. Reynolds v. Basinger*, 90 Ohio St.3d 303, 2003-Ohio-3631, 791 N.E.2d 459, ¶ 7; *State v. Adams*, 4th Dist. Lawrence No. 16A23, 2017-Ohio-519, ¶ 11, 14, citing R.C. 2953.21(C).

**JUDGMENT AFFIRMED AS MODIFIED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED AS MODIFIED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. Concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**